IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| CHERRYPICK CAPITAL, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>BBT THREE, LLC; SPIRE REAL ESTATE, LLC; SPIRE PROPERTY MANAGEMENT, LLC; BRAD LOWE; LAURAL VILLAGE APARTMENTS, LLC, a/k/a LAUREL VILLAGE APARTMENTS LLC; UNIVERSITY PARK PLACE, LLC; MATTHEW DEBOTH; and CBRE GROUP, INC.,<br><br>    Defendants. | Case No. 4:24-cv-00111<br><br><br><br><br>**DEFENDANT BBT THREE, LLC SPIRE REAL ESTATE LLC, SPIRE PROPERTY MANAGEMENT LLC AND BRAD LOWE'S ANSWER, AFFIRMATIVE DEFENSES, AND JURY DEMAND** |

COME NOW Defendants BBT Three, LLC, Spire Real Estate, LLC, Spire Property Management, LLC, and Brad Lowe by and through the undersigned counsel, hereby submits the following Answer, Affirmative Defenses, and Jury Demand:

## I.    PARTIES, JURISDICTION, AND VENUE

1.    Cherrypick is a Wyoming limited liability company authorized to conduct business in the state of Iowa. All members of Cherrypick are domiciled in either the state of Nebraska or the state of California.

**ANSWER: Denied for Lack of Information.**

2.    Defendant BBT Three, LLC (hereinafter "BBT") is an Iowa limited liability company with its principal place of business in Polk County, Iowa. Upon information and belief, all members of BBT are domiciled in the state of Iowa.

**ANSWER: Admitted.**

3.      Defendant Spire Real Estate, LLC (hereinafter "Spire RE") is an Iowa limited liability company with its principal place of business in Polk County, Iowa.  Upon information and belief, all members of Spire RE are domiciled in the state of Iowa.

**ANSWER: Admitted.**

4.      Defendant Spire Property Management, LLC (hereinafter "Spire PM") is an Iowa limited liability company with its principal place of business in Polk County Iowa.  Upon information and belief, all members of Spire PM are domiciled in the state of Iowa.

**ANSWER: Admitted.**

5.      Defendant Brad Lowe (hereinafter "Lowe") is an individual residing in Polk County, Iowa.  Upon information and belief, Lowe is a member of BBT, Spire RE, and Spire PM.

**ANSWER: Admitted.**

6.      Defendant Laural Village Apartments, LLC (hereinafter "Laural") is an Iowa limited liability company with its principal place of business in Monroe County, Iowa.  All members of Laural are domiciled in the state of Iowa.

**ANSWER: Denied for Lack of Information.**

7.      Upon information and belief, Laural and Laurel Village Apartments, LLC (hereinafter "Laurel") refer to the same entity, and Laural and Laurel were used interchangeably for all transactions detailed throughout this Complaint.

**ANSWER: Denied for lack of information.**

8.      Defendant University Park Place, LLC (hereinafter "University") is an Iowa limited liability company with its principal place of business in Monroe County, Iowa. All members of University are domiciled in the state of Iowa.

**ANSWER: Denied for lack of information.**

9.      Defendant Matthew DeBoth (hereinafter "DeBoth") is an individual residing in Monroe County, Iowa. Upon information and belief, DeBoth is the sole and therefore controlling member of Defendants Laural and University.

**ANSWER: Denied for lack of information.**

10.     Defendant CBRE Group, Inc. (hereinafter "CBRE") is a Delaware corporation with its principal place of business in Dallas, Texas. CBRE is registered to do business in the state of Iowa as "CBRE, Inc.", and it conducts continuous, systematic, and routine business in Iowa through its employees and agents.

**ANSWER: Denied for lack of information.**

11.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(1). Complete diversity of citizenship exists between the parties, and the amount in controversy involves, exclusive of interest and costs, sums in excess of $75,000.00.

**ANSWER: Denied for lack of information.**

12.     The Court has personal jurisdiction over the Defendants as they are domiciled in the state of Iowa, with the exception of CBRE. The Court has personal jurisdiction over the Defendants, as they conduct continuous, systematic, and routine business within the state of Iowa.

**ANSWER: Denied for lack of information.**

13. Venue is proper pursuant to 28 U.S.C. § 1391(b) as the Defendants are domiciled in this judicial district, with the exception of CBRE. Venue is also proper pursuant to 28 U.S.C. § 1391(b) as the property that is the subject of this action is situated within this judicial district.

**ANSWER: Denied for lack of information.**

## II.   FACTUAL BACKGROUND

14. Cherrypick restates the allegations contained in paragraphs 1 through 12 above, as if fully restated herein.

**ANSWER: Defendant restates its Answers in Paragraphs 1-13.**

15. Cherrypick and DeBoth began negotiations in 2022 for the purchase by Cherrypick of various properties owned by DeBoth through limited liability companies under DeBoth's ownership and control.

**ANSWER: Denied for lack of information.**

16. On or about September 14, 2022, Cherrypick entered into a purchase agreement with University for the properties located at 3725 University Avenue, Des Moines, Iowa 50310 and 3809 University Avenue, Des Moines, Iowa 50310 (collectively "University Properties"). A copy of the purchase agreement is attached hereto as Exhibit "A" and incorporated by this reference.

**ANSWER: Denied for lack of information. Exhibit A speaks for itself.**

17. On or about September 14, 2022, Cherrypick entered into a purchase agreement with Laural for the property located at 1040 9th Street, Des Moines, Iowa 50314 ("Laural Property"). A copy of the purchase agreement is attached hereto as Exhibit "B" and incorporated by this reference.

**ANSWER: Denied for lack of information. Exhibit B speaks for itself.**

18. For the property purchase in paragraph 15, CBRE served as the broker and the sellers' agent on behalf of University and DeBoth, through its employees Max Colby and Shana Patrick.

**ANSWER: Denied for lack of information.**

19. For the property purchase in paragraph 16, CBRE served as the broker and the sellers' agent on behalf of Laural and DeBoth, through its employees Max Colby and Shana Patrick.

**ANSWER: Denied for lack of information.**

20. Cherrypick paid a twenty-five thousand dollar ($25,000.00) earnest money deposit for each of the property purchases in paragraphs 14 and 15, totaling fifty thousand dollars ($50,000.00). The earnest money deposits are currently held in a trust account.

**ANSWER: Denied for lack of information.**

21. In anticipation of purchasing the University Properties and the Laural Property, Cherrypick began negotiations with Lowe and Spire PM with the intention of hiring Spire PM to become the property manager for the University Properties and the Laural Property on behalf of Cherrypick.

**ANSWER: Denied for lack of information.**

22. Spire PM, Spire RE, and BBT share common ownership and membership through Lowe.

**ANSWER: Admit.**

23. Both purchase agreements at Exhibit A and Exhibit B contained certain financing contingencies.

**ANSWER: Denied for lack of information.  Exhibit A and Exhibit B speak for themselves.**

24.     On or about November 29, 2022, addendums to both purchase agreements were executed between Cherrypick and University, and Cherrypick and Laural, respectively, which eliminated the financing contingencies.  The addendums are attached hereto as Exhibit "C" and incorporated by this reference.

**ANSWER: Denied for lack of information. Exhibit C speaks for itself.**

25.     Upon information and belief, between December 2023 and January 2024, DeBoth and Lowe began negotiations with one another for Lowe and BBT to purchase the University Properties from University and DeBoth, as well as to purchase the Laural Property from Laural and DeBoth.

**ANSWER: Denied for lack of information.**

26.     Upon information and belief, the negotiations in paragraph 24 were facilitated by or were conducted directly through CBRE.

**ANSWER: Denied for lack of information.**

27.     On or about January 24, 2023, University, Laural, and DeBoth informed Cherrypick through CBRE that they would not go through with the sale of the University Properties and the Laural Property.

**ANSWER: Denied for lack of information.**

28.     On or about February 24, 2023, University, Laural, and DeBoth informed Cherrypick through CBRE that the non-existent financing contingencies were the reason for not completing the transaction.

**ANSWER: Denied for lack of information.**

29. Cherrypick subsequently discovered that, on or about March 6, 2023, the University Properties were sold by University to BBT and Lowe, as BBT's owner. A copy of the sales contract is attached hereto as Exhibit "D" and incorporated herein by this reference. Cherrypick also discovered that, on or about March 7, 2023, the Laural Property was sold by Laural to BBT and Lowe, as BBT's owner. A copy of the sales contract is attached hereto as Exhibit "E" and incorporated herein by this reference.

**ANSWER: Denied for lack of information. Exhibit B speaks for itself.**

30. Upon information and belief, University and Laural have been under the exclusive control of DeBoth at all times material herein.

**ANSWER: Denied for lack of information.**

31. Upon information and belief, DeBoth used University and Laural merely as shell entities to commingle assets between himself and these entities for his own personal use at all times material herein.

**ANSWER: Denied for lack of information.**

32. Upon information and belief, University and DeBoth had the authority to act on behalf of one another with regard to the University Properties at all times material herein.

**ANSWER: Denied for lack of information.**

33. Upon information and belief, Laural and DeBoth had the authority to act on behalf of one another with regard to the Laural Property at all times material herein.

**ANSWER: Denied for lack of information.**

34. Upon information and belief, University and Laural have been nothing more than façades for the personal dealings of DeBoth at all times material herein.

**ANSWER: Denied for lack of information.**

35. Upon information and belief, Lowe formed BBT for the sole or primary purpose of purchasing and holding the University Properties and Laural Property.

**ANSWER: Denied for lack of information.**

36. Upon information and belief, BBT has been nothing more than a façade for the personal dealings of Lowe at all times material herein.

**ANSWER: Denied.**

### III. FIRST CLAIM FOR RELIEF – SPECIFIC PERFORMANCE (AGAINST BBT, LAURAL, AND UNIVERSITY)

37. Cherrypick restates the allegations contained in paragraphs 1 through 35 above, as if fully restated herein.

**ANSWER: Defendants restate the Answers in Paragraphs 1-36.**

38. Cherrypick entered into purchase agreements with University and Laural, which are legally enforceable contracts.

**ANSWER: Denied.**

39. University and Laural have failed and refused to abide by the terms of the purchase agreements.

**ANSWER: Denied.**

40. Cherrypick has satisfied all conditions precedent to closing, pursuant to the purchase agreements.

**ANSWER: Denied.**

41. By virtue of communication with CBRE employees and Lowe's membership in both Spire PM and BBT, BBT had notice of Cherrypick's ongoing claim to the enforceability of the purchase agreements before BBT took possession of the University Properties and the Laural Property.

**ANSWER: Denied.**

**WHEREFORE, Plaintiff's Petition should be dismissed with costs to Plaintiff.**

    **IV.    SECOND CLAIM FOR RELIEF – BREACH OF CONTRACT (AGAINST DEBOTH, LAURAL, AND UNIVERSITY)**

42. Cherrypick restates the allegations contained in paragraphs 1 through 40 above, as if fully restated herein.

**ANSWER:  Defendants restate the Answers in Paragraphs 1-41.**

43. University and Laural, as sellers and signatories of the purchase agreements, are bound by the terms of the purchase agreements.

**ANSWER: Denied for lack of information.**

44. University and Laural have failed and refused to complete the sale of the properties pursuant to the terms of the purchase agreements.

**ANSWER: Denied for lack of information.**

45. Cherrypick has performed all conditions precedent under the purchase agreement.

**ANSWER: Denied for lack of information.**

46. University's and Laural's failures to proceed with the sales of the University Properties and Laural Property, respectively, constitute a breach of the purchase agreements.

**ANSWER: Denied for lack of information.**

47. DeBoth is liable for University's and Laural's breaches under the doctrine of piercing the corporate veil.

**ANSWER: Denied for lack of information.**

48. Cherrypick has been damaged by University's, Laural's, and DeBoth's breach.

**ANSWER: Denied.**

**WHEREFORE, Plaintiff's Petition should be dismissed with costs to Plaintiff.**

### V. THIRD CLAIM FOR RELIEF – INTENTIONAL INTERFERENCE WITH EXISTING CONTRACTS
### (AGAINST BBT, LOWE, SPIRE RE, AND SPIRE PM)

49. Cherrypick restates the allegations contained in paragraph 1 through 47 above, as if fully restated herein.

**ANSWER: Defendants restate the Answers in Paragraphs 1-48.**

50. Cherrypick executed valid and enforceable contracts with both University and Laural.

**ANSWER: Denied.**

51. BBT knew of these contracts because its member, Lowe, was in negotiations with Cherrypick for Lowe's other business, Spire PM, to become the property manager for the University Properties and Laural Property on behalf of Cherrypick, following the completion of the sales from University and Laural to Cherrypick.

**ANSWER: Denied.**

52. BBT, Lowe, Spire RE, and Spire PM intentionally and improperly interfered with the contracts by convincing University and Laural to sell the University Properties and Laural Property, respectively, to BBT, despite BBT's, Lowe's, Spire RE's, and Spire PM's knowledge of the existing enforceable contracts that University and Laural had with Cherrypick.

**ANSWER: Denied.**

53. The interference caused University, Laural, and DeBoth not to fulfill their obligations to Cherrypick under the contracts.

**ANSWER: Denied.**

54. Cherrypick was damaged as a result of the interference.

**ANSWER: Denied.**

### VI. FOURTH CLAIM FOR RELIEF – PROFESSIONAL NEGLIGENCE (AGAINST CBRE)

55. Cherrypick restates the allegations contained in paragraphs 1 through 53 above, as if fully stated herein.

**ANSWER:  Defendants restate the Answers in Paragraphs 1-54.**

56. Upon information and belief, CBRE, as the broker and sellers' agent, knew before January 24, 2023 that University, Laural, and DeBoth intended to terminate the contracts with Cherrypick for the University Properties and Laural Property.

**ANSWER:  Denied for lack of information.**

57. CBRE knew or reasonably should have known that University, Laural, and DeBoth had no valid grounds for terminating the contracts.

**ANSWER: Denied for lack of information.**

58. Upon information and belief, CBRE, as the broker and sellers' agent, knew before January 24, 2023 that BBT, Lowe, Spire RE, and Spire PM were interested in purchasing the University Properties and Laural Property.

**ANSWER: Denied for lack of information.**

59. Upon information and belief, CBRE knew before February 24, 2023 that BBT, Lowe, Spire RE, and Spire PM were in the process of purchasing the University Properties and Laural Property.

**ANSWER: Denied for lack of information.**

60. Despite its awareness of and involvement in the contracts Cherrypick had with both University and Laural for the purchase of the University Properties and Laural Property, respectively, CBRE failed to disclose to Cherrypick at any time prior to March 6, 2023 that BBT, Lowe, Spire RE, and Spire PM expressed interest in or began the process of purchasing the University Properties and Laural Property.

**ANSWER: Denied for lack of information.**

61. Upon information and belief, CBRE received commissions from University and Laural for the sale of the properties to BBT, Lowe, Spire RE, and Spire PM.

**ANSWER: Denied for lack of information.**

62. As a real estate broker, CBRE and its employees Max Colby and Shana Patrick had a duty of honesty, good faith, and fair dealing to all parties to a transaction, under Iowa Code § 543B.56.

**ANSWER:  Denied for lack of information.**

63. CBRE breached its duty to serve Cherrypick honestly, in good faith, and through fair dealing by willfully or negligently failing to disclose to Cherrypick that BBT, Lowe, Spire RE, and Spire PM expressed interest in or began the process of purchasing the University Properties and Laural Property.

**ANSWER: Denied for lack of information.**

64. CBRE's failure to disclose this information to Cherrypick caused damage to Cherrypick by, among other harms, undermining Cherrypick's valid contracts with University and Laural and preventing Cherrypick from timely pursuing legal action against BBT, Lowe, Spire RE, Spire PM, University, Laural, and DeBoth before the University Properties and Laural Property were wrongfully sold to BBT.

**ANSWER: Denied for lack of information.**

**WHEREFORE, Plaintiff's Petition should be dismissed with costs to Plaintiff.**

### VII.   FIFTH CLAIM FOR RELIEF – CIVIL CONSPIRACY
### (AGAINST BBT, SPIRE RE, SPIRE PM, LOWE, UNIVERSITY, LAURAL, AND DEBOTH)

65. Cherrypick restates the allegations contained in paragraphs 1 through 51 above, as if fully stated herein.

**ANSWER: Defendants restate the Answers in Paragraphs 1-64.**

66. The Defendants agreed by words and/or conduct to accomplish an unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful.

**ANSWER: Denied.**

67. The unlawful purpose includes the intentional interference with existing contracts.

**ANSWER: Denied.**

68. The unlawful means include, without limitation, breach of contract and intentional interference with existing contracts.

**ANSWER: Denied.**

**WHEREFORE, Plaintiff's Petition should be dismissed with costs to Plaintiff.**

## VIII. DAMAGES

69. With respect to the Laural Property, Cherrypick has been damaged in the amount of $4,690,000.00.

**ANSWER: Denied.**

70. With respect to the University Properties, Cherrypick has been damaged in the amount of $5,322,138.00.

**ANSWER: Denied.**

71. Cherrypick has suffered additional damages, including but not limited to its earnest money deposits and capital investments into due diligence in the amount of $304,000.00.

**ANSWER: Denied.**

**WHEREFORE, Plaintiff's Petition should be dismissed with costs to Plaintiff.**

## AFFIRMATIVE DEFENSES

1. Plaintiff fails to state any claim upon which relief can be granted.

2. Plaintiff's claims are barred in whole or in part by the doctrine of impossibility.

14

3. Plaintiff's claims are barred in whole or in part by the doctrine of laches.

4. Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

5. Defendants are not the cause or sole proximate cause of any alleged damages.

6. Plaintiff's claims are barred in whole or in part by Plaintiff's breach of the agreement(s).

7. Plaintiff's damages are the result of Plaintiff's own actions or inactions.

8. Plaintiff's damages are the result of the actions or inactions of a third party.

9. Plaintiff has failed to mitigate damages.

## JURY DEMAND

Defendant BBT Three, LLC demands a trial by jury on all issues triable.

**Certificate of Service**

The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of the attorneys listed as receiving notice on April 26, 2024, by CM/ECF.

/s/ *Michael C. Kuehner*

Copy to:

Alexander Dehner
Smith Pauley LLP
3555 Farnam Street, Suite 1000
Omaha, NE 68131
adehner@xmithpauley.com

ATTORNEY FOR PLAINTIFF

ZENOR LAW FIRM, PLC

By: /s/ *Michael C. Kuehner*
Michael C. Kuehner, AT0010974

111 E. Grand Ave., Suite 400
Des Moines, IA 50309
Phone: 515.650.9005
Fax: 515.206.2654
michael@zenorlaw.com

ATTORNEY FOR DEFENDANT BBT THREE, LLC, SPIRE REAL ESTATE, LLC, AND BRAD LOWE